IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOROTHY MITTELSTAEDT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-5131 |
| | ) | |
| vs. | ) | Complaint for Specific Performance and Other |
| | ) | Relief |
| GAMLA-CEDRON ORLEANS, LLC, a | ) | |
| Delaware Limited Liability Company, | ) | Hon. Judge Virginia M. Kendall |
| | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

## PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HER MOTION TO STRIKE AFFIRMATIVE DEFENSE

Dorothy Mittelstaedt ("Plaintiff" or "Mittelstaedt"), by and through her undersigned counsel, and pursuant to Rules 9(b) and 12(f) of the Federal Rules of Civil Procedure, hereby submits this Reply Memorandum in further support of her motion to strike and dismiss the affirmative defense ("Motion to Strike") pled by defendant, GAMLA-CEDRON ORLEANS, LLC, ("Defendant" or "Gamla"). In further support of her Motion to Strike, Plaintiff states as follows:

## INTRODUCTION

In her opening brief in support of her Motion to Strike, Mittelstaedt demonstrated that Gamla could not assert a legally sufficient affirmative defense to their breach of contract claim by asserting fraud in a separate claim with a 3rd party. Gamla's claim that it was deceived when Gamla purchased Mittelstaedt's contract from a third-party seller, is not a legally sufficient defense under Illinois law to her breach of contract action. (Pl. Mem., Dkt. 28, at 2-5.) Even if this were a recognized defense, Plaintiff also showed that Gamla failed to plead the elements of fraud with specificity as required under Rule 9(b) of the Federal Rules of Civil Procedure.

Gamla has responded by arguing that Mittelstaedt's engaged in a fraudulent scheme undertaken with third-parties to defraud Gamla (Response, Dkt. 30, at 2-3); that even if she did not

participate in any wrongdoing, Mittelstaedt is liable for fraud if she aided and abetted fraudulent conduct or knowingly benefitted from said conduct (*id.* at 4-5); and that apart from its allegation that it was misled by boilerplate language in Mittelstaedt's contract into believing the unit was completed, the Affirmative Defense alleges other misrepresentations and omissions sufficient to plead fraud with particularity (*id.* at 5-7). As will be shown below, none of these arguments have merit.

By way of a brief summary of the factual background, since June 27, 2012, when Mittelstaedt filed her complaint against Gamla (the "Complaint"), she has been attempting to purchase a condominium unit and related property located at 757 N. Orleans, Chicago, Illinois ("Unit 2206"). Mittelstaedt originally purchased Unit 2206 under a contract executed by May 11, 2012 (the "2206 Contract") with a non-party to this litigation, 327 Chicago, L.L.C. ("327 LLC"). Shortly thereafter, on May 16, 2012, 327 LLC closed on an assignment of the 2206 Contract to Gamla as part of a bulk sale of 40 condominium units (the "Bulk Sales Agreement"). Under this sale and assignment, Gamla assumed all of 327 LLC's obligations under the 2206 Contract. Despite Mittelstaedt's performance under the 2206 Contract, and Gamla's own obligations as the assignee, Gamla has refused to schedule a closing for the sale of Unit 2206, expressing a preference for leasing the unit rather than satisfying its contractual duties to Mittelstaedt.

In its Answer to the Complaint, Defendant asserted "Affirmative Defenses" consisting of a set of confused allegations with no identifying legal theory. The only factual allegations Defendant makes in these "Affirmative Defenses" concern non-parties to this case who were connected in some way with Defendant's Bulk Sale Agreement: 327 LLC; R.T.G. Land Development Corporation ("RTG Land Development"), 327 LLC's member and manager; RTG Enterprises, Ltd. ("RTG"), the broker for the sale of the 40 units to Gamla, including Unit 2206; and Richard Gammonley, who has an interest in RTG and RTG Land Development. (Ans. Aff. Def., Dkt. No. 25, ¶¶ 2-19.)

Remarkably, the only allegations of fact concerning the Plaintiff made in the Affirmative Defense are that she "is the mother of Richard Gammonley," and that "[o]n information and belief, Mittelstaedt is also an experienced licensed real estate sales agent having sold millions of dollars worth of property in the Chicagoland region." (Ans. Aff. Def., Dkt. No. 25, ¶ 1.) Defendant's remaining allegations concerning Plaintiff are pure legal conclusions, made without any factual detail or support.

## ARGUMENT

The Defendant does not dispute the central point in Plaintiff's Motion to Strike, that Defendant's allegations that third-parties made misrepresentations and fraudulent omissions in connection with another contract – one that the plaintiff did not sign – are not sufficient to support an affirmative defense to a breach of contract claim under Illinois law. (Pl. Mem., Dkt. 28, at 2-5.) Rather, the Defendant ignores it, and makes three attempts to show that it has alleged actions taken by Plaintiff in connection with the Bulk Sale Agreement that constitute an affirmative defense to her own 2206 Contract.

### I. Defendant Has Failed to Allege that Plaintiff Engaged in a Fraudulent Scheme with Third-Parties in Connection with the Bulk Sales Agreement.

The Defendant begins its Response by arguing that Plaintiff acted in concert with her son and other third-parties to defraud him, not in connection with her own residential sale contract, but in connection with the Bulk Sales Agreement – a business deal that even Defendant does not allege she played a part in or was aware of when it was taking place. ("Plaintiff's attempt to enforce the contract is part of concerted fraudulent and deceptive conduct by the plaintiff and her son, Richard Gammonley, and his related entities, undertaken with the intent to deprive the Defendant of the benefit of its bargain under the terms of a contract to purchase in bulk condominium units at 757 N. Orleans, Chicago, Illinois," Response, Dkt. 30, at 2-3.) Even if this were a valid legal theory, and Defendant has offered no legal authority to contradict the authority provided in the Plaintiff's

3

opening brief that it is not, none of the allegations the Defendant recites from paragraphs 17 through 24 of its Affirmative Defense assert any facts to suggest that the Plaintiff participated in such a fraudulent scheme. (Response, Dkt. 30, at 3-4.)

As evidenced of its allegation that Plaintiff engaged in a fraudulent scheme, Defendant relies on its allegation that prior to the closing on the Bulk Sales Agreement, neither 327 Chicago, RTG or Gammonley or anyone on their behalf, disclosed that Gammonley was the Plaintiff's son, that Unit 2206 was to be built out, or that the two parking spaces were subject to an option to purchase under an existing lease. (Response, Dkt. 30, at 3; (Ans. Aff. Def., Dkt. No. 25, ¶ 17.) But these allegations, even if true, do not establish that Mittelstaedt had any duty to make any disclaimers in connection with BSA, since they do not establish that she was involved in any way in the negotiation or closing of the Bulk Sales Agreement or was a party to the agreement. As such, there is no basis, viewing the Affirmative Defense in its most favorable light, for concluding that these assertions, if true, would establish that Mittelstaedt had engaged in a fraudulent scheme in connection with the Bulk Sales Agreement.

These non-disclaimer allegations are followed by a string of repetitive conclusory allegations that Mittelstaedt acted in concert with her son and his entities when they "intentionally kept secret" her relationship with her son (Ans. Aff. Def., Dkt. No. 25, ¶ 23); when they, "attempted, through their deceptive and concerted efforts, to force the Defendant into conveying unit 2206 at a price significantly lower than the price at which the Defendant just purchased the unit," (*id.* ¶ 24); and when they "fraudulently induced Gamla" to accept the 2206 Contract (*id.* ¶ 25). Bare allegations that Mittelstaedt acted in concert with others with fraudulent intent are not sufficient, however, to allege fraud, Defendant provides no factual allegations that Mittelstaedt actually engaged in any specific actions with others, or that she was a party to the Bulk Sales Agreement and therefore incurred legal duties to Gamla in connection to that Agreement.

The only allegation in Defendant's litany that relates to Mittelstaedt's *own* conduct is that her 2206 Contract contained language stating that Unit 2206 was completed, and that when she signed it she knew Unit 2206 was not completed. But this allegation, even if true, creates no grounds for an affirmative defense. Her lack of bargaining ability to change boilerplate language in a pre-printed sales arguement hardly operates as a fraud on Gamla, the buyer of 40 units in various states of completion in the same development. Simply stated, Gamla is not permitted to rely on such boilerplate representations when it had the opportunity to determine whether Unit 2206 was completed before assuming the 2206 Contract. (*See* Pl. Mem., Dkt. 28, at 6, citing *Paper Express, Ltd. V. Pfankuch Maschinen GmbH*, 972 F.2d 753, 758 (7th Cir. 1993).) Gamla does not contest this legal point in its Response. (Response, Dkt. 30, at 5-6.) Thus, Gamla has not identified allegations to support a legally cognizable affirmative defense to the 2206 Contract based on participation by the Plaintiff in any scheme with third-parties to fraudulently induce Gamla to enter to the Bulk Sales Agreement.

## II. Defendant Has Not Alleged Any Facts to Support Its Claim that Plaintiff Aided and Abetted Fraud or Knowingly Benefitted from Fraudulent Conduct of Others.

In the alternative, the Defendant argues that even if it has failed to allege any fraudulent conduct by Plaintiff herself, "Plaintiff can still be liable for fraud if she aided or abetted the fraud, or benefitted from the fraud." (Response, Dkt. 30, at 4.) Without citation, Defendant claims that "the allegations are clear and specific that plaintiff was participating in the deceptive conduct of her son with the attempt to benefit from that conduct." (*Id.* at 5.) As shown above, Defendant's best efforts have failed to identify any allegations in its Affirmative Defenses of participation by Plaintiff in any deceptive conduct by her son or anyone else. As Defendant's authorities establish, one of the elements of fraud through aiding and abetting under Illinois law is that "the defendant must knowingly and substantially assist the principal violation." *F.D.I.C. v. Parzygnat*, 2011 U.S. Dist. LEXIS 94182 (Aug. 23, 2011) at *5, citing *Thornwood, Inc. v. Jenner & Block*, 334 Ill. App. 3d 15 (Ill.

5

App. Ct. 2003). Without factual allegations of any participation by Plaintiff in the purported fraud, Defendant cannot sustain an Affirmative Defense of fraud based on aiding and abetting.

Moreover, the only allegation in the Affirmative Defenses that Plaintiff intended to benefit from the alleged misconduct of others is the allegation that "Mittelstaedt, together with her son and his entities, attempted, through their deceptive and concerted efforts, to force the Defendant into conveying unit 2206 at a price significantly lower than the price at which the Defendant just purchased the unit, all for the sole purpose of enriching 327 Chicago, RTG, Gammonley and Mittelstaedt." (Ans. Aff. Def., Dkt. No. 25, ¶ 24.) This allegation does not, however, show that Mittelstaedt intended to receive a benefit from the Bulk Sale Agreement because there are no allegations that she was involved in or was even aware of the price being negotiated between Gamley and 327 LLC for the assignment of her 2206 Contract.

Moreover, the Affirmative Defense does not allege that Plaintiff had any ownership interest in 327 LLC such that she would receive a financial benefit from the spread between her price and the price received by 327 LLC for Unit 2206. This case is therefore distinguishable from *In the Matter of Lake States Commodities, Inc.*, 936 F. Supp. 1461, 1477-78 (N.D. Ill. 1996), where the complaint specifically alleged that the defendant broker knew he was trading with funds acquired through fraud, and that he was able to increase his commissions by trading with these funds. Accordingly, the Defendant has failed to allege facts sufficient to support an Affirmative Defense of fraud through aiding or abetting or through knowingly receiving the fruits of fraudulent conduct.

### III. None of the Allegations the Defendant Relies on Are Sufficient to Plead an Affirmative Defense of Fraud Against the Plaintiff.

Defendant's last argument is that while Plaintiff pointed out that Defendant had no right to rely on the representations in the 2206 Contract concerning the status of the 2206 Unit, there are other assertions in the Affirmative Defense that suffice to allege "participation in the fraudulent scheme by the Plaintiff. . ." (Response, Dkt. 30, at 6.) But this section of Defendant's Response

6

does not identify any allegations beyond those identified in the first section of its Response. As shown above, all of these allegations relate to the Bulk Sales Agreement, and none of them assert any facts to even suggest that Plaintiff was a party to, was involved in any way with the negotiation of, or stood to receive the fruits resulting from, that Agreement.

## CONCLUSION

For all the reasons set forth above, Plaintiff moves this Honorable Court to strike and dismiss the "Affirmative Defense" pled by Defendant, with prejudice, on the grounds that it is not legally sufficient or cognizable to defeat Plaintiff's claim.

Shelley Smith (#6208287)
Shorge K. Sato (#6278382)
**BROWN, UDELL, POMERANTZ & DELRAHIM, LTD.**
1332 North Halsted Street — Suite 100
Chicago, Illinois 60642
(312) 475-9900

Respectfully submitted,

DOROTHY MITTELSTAEDT

\s\ Shorge K. Sato, Esq.
One of her Attorneys

7